PER CURIAM.
 

 Petitioner, Ted Williams, seeks review of the decision of the First District Court of Appeal in
 
 Oken v. Williams,
 
 23 So.3d 140 (Fla. 1st DCA 2009), on the ground that it expressly and directly conflicts with a decision of the Fourth District Court of Appeal in
 
 St. Mary’s Hospital v. Bell,
 
 785 So.2d 1261 (Fla. 4th DCA 2001), on a question of law. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we quash the First District’s decision in
 
 Oken,
 
 and approve the Fourth District’s decision in
 
 St. Mary’s.
 
 Because we find that the First District’s grant of certiorari was inappropriate, we decline to address Williams’ remaining issues.
 

 Facts and Procedural History
 

 On March 8, 2007, Ted Williams sent by certified mail, return receipt requested, a notice of intent to initiate litigation to Dr. Keith Oken and the Mayo Clinic of Jacksonville. The notice alleged that, on February 4, 2005, Williams went to the emergency room at St. Luke’s Hospital complaining of chest pain.
 
 Oken,
 
 23 So.3d at 141. There, he was evaluated by Dr. Catherine Northrop, an emergency room physician.
 
 Id.
 
 Dr. Northrop assessed Williams and then ordered a consultation with Dr. Oken, a board certified cardiologist.
 
 Id.
 
 Williams alleged that, as a result of Dr. Oken’s negligence, he suffered an acute myocardial infarction.
 
 Id.
 
 at 142. Williams alleged that Dr. Oken was negligent in (1) misrepresenting EKG results, (2) failing to admit Williams to the hospital, (3) failing to conduct a full work-up, and (4) later recommending that Williams take Maalox when Williams called in with worsening symptoms.
 
 Id.
 

 Attached to Williams’ notice was the corroborating affidavit and curriculum vitae (CV) of Dr. Foster.
 
 Id.
 
 Dr. Foster’s affidavit and CV revealed that he was “familiar with the appropriate work up and treatment of suspected cardiac patients in the emergency room, and the consequences of failure to timely provide appropriate work up and treatment under such circumstances,” and that he was “familiar with the standard of care of reasonably careful physicians in diagnosing and treating impending myocardial infarction under the same or similar circumstances as those presented in this case.” The affidavit and CV also revealed that Dr. Foster had been employed as an emergency room physician at multiple hospitals.
 
 See id.
 
 Dr. Oken then sent Williams a letter that requested additional corroboration of the claim.
 
 See id.
 

 On August 6, 2007, Williams filed a formal complaint in the Fourth Judicial Circuit Court, in and for Duval County, Florida, alleging the same facts contained in the notice.
 
 Id.
 
 Pursuant to section 766.206, Florida Statutes (2005), Dr. Oken filed a motion to dismiss the complaint for Williams’ alleged failure to timely comply with statutory presuit requirements of chapter 766, Florida Statutes (2005), the Medical Malpractice Reform Act.
 
 See Oken,
 
 23 So.3d at 142. Specifically, Dr. Oken alleged that Dr. Foster was not an expert in the field of cardiology, and as a result, Williams had failed to comply with section 766.102, Florida Statutes (2005), because he failed to attach a corroborating affidavit from a qualified medical expert.
 
 See id.
 
 Williams filed a supplemental affi
 
 *1132
 
 davit from Dr. Foster. The supplemental affidavit indicated that Dr. Foster was board certified in emergency room and family medicine. It also indicated that both of those medical fields involve the “evaluation, diagnosis, or treatment of acute chest pain and impending myocardial infarction,” and that Dr. Foster had “performed 15,000-20,000 evaluations of chest pain in an emergency room setting.” Based on the foregoing, the trial court specifically concluded that Dr. Foster was qualified as an expert and denied Dr. Oken’s motion to dismiss.
 
 See id.
 

 Dr. Oken petitioned the First District for a writ of certiorari.
 
 See Oken,
 
 23 So.3d at 143. The First District held that (1) certiorari review was appropriate, and (2) Dr. Foster, as an emergency medicine and family physician, was not qualified to provide an expert corroborating affidavit for a cardiology-related claim.
 
 Id.
 
 at 150. Therefore, the First District granted Dr. Oken’s petition for writ of certiorari and quashed the trial court’s denial of the motion to dismiss.
 
 Id.
 

 On January 13, 2010, Williams filed a notice to invoke discretionary review jurisdiction in this Court, alleging express and direct conflict between the First District’s decision below and the district court decisions in
 
 Campbell v. State,
 
 949 So.2d 1093 (Fla. 3d DCA 2007),
 
 Fassy v. Crowley,
 
 884 So.2d 359 (Fla. 2d DCA 2004),
 
 St. Mary’s,
 
 785 So.2d 1261,
 
 Fine v. Carney Bank of Broward County,
 
 508 So.2d 558 (Fla. 4th DCA 1987), and
 
 Finchum v. Vogel,
 
 194 So.2d 49 (Fla. 4th DCA 1966). This Court granted review.
 

 Williams raises the following three issues on review: (1) whether the district court erred or exceeded its constitutional authority in reviewing the trial court’s order on certiorari, (2) whether the district court erred in ruling that the uncontradict-ed facts provided by Dr. Foster did not satisfy the statutory presuit requirements for the corroborating affidavit of a medical expert, and (3) whether the district court erred in supporting its decision by reference to internet material cited for the first time in the respondent’s reply brief in the district court. Because the first issue is dispositive, we decline to address Williams’ remaining issues. For the reasons expressed below, we quash the First District’s decision in
 
 Oken
 
 and approve the Fourth District’s decision in
 
 St. Mary’s.
 

 Analysis
 

 A common-law writ of certiorari rests in the sound discretion of the court to which the application was made, and thus, a court’s grant of certiorari is subject to an abuse of discretion standard of review.
 
 See Haines City Cmty. Dev. v. Heggs,
 
 658 So.2d 523, 528 (Fla.1995).
 

 Before a court may grant certio-rari relief from the denial of a motion to dismiss, the petitioner must establish the following three elements: “‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.’”
 
 Reeves v. Fleetwood Homes of Fla., Inc.,
 
 889 So.2d 812, 822 (Fla.2004) (quoting
 
 Bd. of Regents v. Snyder,
 
 826 So.2d 382, 387 (Fla. 2d DCA 2002)). In other words, certiorari relief is available when a lower court has departed from the essential requirements of the law or when a lower court has acted in excess of its jurisdiction, and no appeal or direct method of reviewing the proceeding exists.
 
 See Haines,
 
 658 So.2d at 527. The last two elements are jurisdictional and must be analyzed before the court may even consider the first element.
 
 See id.; Parkway Bank v. Fort Myers Armature Works, Inc.,
 
 658 So.2d 646, 648-49 (Fla. 2d DCA 1995). In the instant case, we concern ourselves with the first element — whether the trial court
 
 *1133
 
 departed from the essential requirements of the law.
 

 Once the district court has granted the petition for writ of certiorari, it must determine whether the first element has been established. We have explained:
 

 [T]he phrase “departure from the essential requirements of law” should not be narrowly construed so as to apply only to violations which effectively deny appellate review or which pertain to the regularity of procedure. In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of clearly established principle of law resulting in a miscarriage of justice.
 

 It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari. A district court may refuse to grant a petition for common-law certiorari even though there may have been a departure from the essential requirements of law. The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal.
 

 Haines,
 
 658 So.2d at 527 (emphasis omitted) (quoting
 
 Combs v. State,
 
 486 So.2d 98, 95-96 (Fla.1983)). Certiorari review is “intended to fill the interstices between direct appeal and the other prerogative writs” and allow a court to reach down and halt a miscarriage of justice where no other remedy exists; it “was never intended to redress mere legal error.”
 
 Broward Cnty. v. G.B.V. Int’l, Ltd.,
 
 787 So.2d 838, 842 (Fla.2001). This Court has cautioned that “cer-tiorari review is appropriate to determine whether a court has conducted the eviden-tiary inquiry required by section 768.72, Florida Statutes, but not so broad as to encompass review of the sufficiency of the evidence considered in that inquiry.”
 
 Globe Newspaper Co. v. King,
 
 658 So.2d 518, 520 (Fla.1995).
 

 In the instant case, the First District categorized their inquiry as a “review [of] the trial court’s legal determination concerning the sufficiency of the corroborating affidavit.”
 
 Oken,
 
 23 So.3d at 145. The First District attempted to justify this action by stating that the corroborating affidavit “goes to the very core of the presuit notice requirement in medical malpractice actions.”
 
 Id.
 
 However, Florida courts have created an exception to the general rule — that certiorari review is inappropriate to review the denial of a motion to dismiss — and permit certiorari review when the presuit requirements of a medical malpractice statute are at issue.
 
 See, e.g., Martin Mem’l Med. Ctr., Inc. v. Herber,
 
 984 So.2d 661, 662 (Fla. 4th DCA 2008);
 
 Lakeland Reg’l Med. Ctr. v. Allen,
 
 944 So.2d 541, 543 (Fla. 2d DCA 2006). The certiorari exception for the chapter 766 presuit requirements is premised on the purpose of the Medical Malpractice Reform Act
 
 [1]
 
 — to avoid meritless claims
 
 *1134
 
 and to encourage settlement for meritorious claims.
 

 Here, the First District classified the trial court’s denial of Oken’s motion to dismiss as “[a] non-final order for which no appeal is provided by Rule 9.130.”
 
 Oken,
 
 23 So.3d at 143 (quoting
 
 Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1099 (Fla. 1987)). Florida Rule of Appellate Procedure 9.130 governs the review of nonfinal orders by district courts and limits such review to those specified in the rule.
 
 See Reeves,
 
 889 So.2d at 819. Orders denying a motion to dismiss, such as in the instant case, are not enumerated in rule 9.130. It is generally inappropriate to review a trial court’s denial of a motion to dismiss.
 
 See Martin-Johnson,
 
 509 So.2d at 1099,
 
 superseded by statute on other grounds,
 
 § 768.72, Fla. Stat. (1989). We have explained, “[I]t is extremely rare that erroneous interlocutory rulings can be corrected by resort to common law certiorari. It is anticipated that since the most urgent interlocutory orders are appealable under this rule, there will be very few cases where common law certiorari will provide relief.”
 
 Martin-Johnson,
 
 509 So.2d at 1098-99 (quoting Fla. R.App. P. 9.130 committee note (1977)). As a result, we must determine whether the circumstances in
 
 Oleen
 
 render it one of the rare cases contemplated by
 
 Martin-Johnson
 
 in which certiorari review is appropriate.
 

 This Court has limited certiorari as a matter of policy to avoid piecemeal review of pretrial orders.
 
 See Jaye v. Royal Saxon, Inc.,
 
 720 So.2d 214 (Fla.1998) (holding that certiorari is inappropriate to review an order striking demand for a jury trial). However, in numerous cases, Florida courts have permitted certiorari review to determine whether the defendant was afforded the proper process through procedural compliance with the statutory requirements.
 
 See, e.g., Globe,
 
 658 So.2d at 520 (holding that appellate courts have certiorari jurisdiction to review whether circuit court has conformed with procedural requirements of statute governing pleading of punitive damages, but not to review a circuit court’s decision to grant or deny leave to amend complaint to include punitive damages once procedural requirements have been met);
 
 Tenet S. Fla. Health Sys. v. Jackson,
 
 991 So.2d 396, 399 (Fla. 3d DCA 2008) (granting certiorari where trial court incorrectly found that presuit notice under section 766.106(2), Florida Statutes (2007), was not required);
 
 Martin Mem’l,
 
 984 So.2d at 662 (granting certiorari where trial court failed to determine whether plaintiff conducted good faith investigation or whether there was reasonable basis for claim);
 
 Corbo v. Garcia,
 
 949 So.2d 366, 368 (Fla. 2d DCA 2007) (granting certiorari where nonfinal order erroneously allowed plaintiff to proceed with action without complying with medical malpractice presuit requirements);
 
 Central Fla. Reg’l Hosp. v. Hill,
 
 721 So.2d 404, 405 (Fla. 5th DCA 1998) (granting certio-rari where plaintiff was permitted to proceed with medical malpractice suit without filing corroborating expert opinion).
 

 
 *1135
 
 The Fourth District’s decision in
 
 St. Mary’s,
 
 which serves as the basis for this Court’s discretionary review, got it right. In
 
 St. Mary’s,
 
 the personal representative of the deceased’s estate filed with St. Mary’s Hospital a notice of intent to initiate litigation, pursuant to section 766.102(2), alleging failure to properly deliver medical care to the decedent.
 
 St. Mary’s,
 
 785 So.2d at 1261. Attached to the notice was an affidavit from the decedent’s primary care physician, confirming that the mother of the decedent took the decedent to St. Mary’s emergency room several days prior to his death.
 
 Id.
 
 However, St. Mary’s filed a motion to dismiss, alleging that the plaintiff had failed to comply with the statutory presuit requirements by failing to make a reasonable presuit investigation, because the plaintiff failed to provide any documentation that the decedent had actually been treated at St. Mary’s.
 
 Id.
 
 at 1261-62. At an eviden-tiary hearing, a witness for St. Mary’s testified that the lack of records indicated the decedent had not been treated at St. Mary’s.
 
 Id.
 
 at 1262. However, the trial court denied St. Mary’s motion to dismiss.
 
 Id.
 

 St. Mary’s petitioned the Fourth District for a writ of certiorari. The Fourth District dismissed the petition, explaining that “certiorari was unavailable to review the sufficiency of the evidence to allow a claim for punitive damages under section 768.72, Florida Statutes (2000).”
 
 St. Mary’s,
 
 785 So.2d at 1262 (citing
 
 Ortega v. Silva,
 
 712 So.2d 1148, 1149 (Fla. 4th DCA 1998)). In so holding, the Fourth District reasoned that “certiorari does not lie for appellate courts to reweigh the evidence presented concerning compliance with the presuit statutory requirements.”
 
 Id.
 

 Both Williams and Dr. Oken cite to this Court’s decision in
 
 Globe
 
 to support their respective positions regarding the First District’s grant of Dr. Oken’s petition for writ of certiorari.
 
 Globe
 
 was a certified conflict case involving punitive damages. 658 So.2d at 519. In that case, the trial court permitted the plaintiff to amend his complaint to include punitive damages.
 
 Id.
 
 The trial court conducted an evidentiary hearing and found that the proffered evidence established a reasonable basis for a punitive damages claim and issued an order granting the plaintiffs motion to amend.
 
 Id.
 
 The district court denied Globe’s petition for writ of certiora-ri and certified conflict with the decisions of other districts.
 
 Id.
 
 at 520. On review, this Court approved the district court’s denial of the petition for writ of certiorari and noted that Globe’s allegations of harm — that Globe’s substantive right to be free from punitive damage litigation based on insufficient evidence — did not rise to the level of material harm that would permit certiorari review.
 
 Id.
 
 at 519-20. There, we concluded that appellate courts have certiorari jurisdiction to review whether a trial judge has conformed with the procedural requirements of section 768.72, but do not have certiorari jurisdiction to review a decision of a trial judge granting leave to amend a complaint to include a claim for punitive damages when the trial judge has followed the procedural requirements of section 768.72.
 
 Globe,
 
 658 So.2d at 519. We further concluded that certiorari is not available to review a determination that there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.
 
 Id.
 
 A review of
 
 Globe
 
 supports Williams’ arguments and demonstrates three things: (1) that a defendant cannot demonstrate material harm required for certiorari review concerning whether a punitive damages claim is viable, or by analogy, an expert is qualified, because those things do not deprive the defendant of the
 
 *1136
 
 statutorily guaranteed process, (2) utilizing certiorari to review the trial court’s findings regarding whether a claim for punitive damages exists, or, by analogy, whether an expert is qualified amounts to reviewing the sufficiency of the evidence, and (3) that granting a petition for writ of certiorari to review the sufficiency of the evidence is inappropriate.
 
 Id.
 
 at 519-20.
 

 The First District’s decision in
 
 Abbey v. Patrick,
 
 16 So.3d 1051 (Fla. 1st DCA 2009), was issued approximately one week prior to its decision in
 
 Oken.
 
 However,
 
 Abbey
 
 is consistent with
 
 St. Mary’s
 
 and inconsistent with
 
 Oken.
 
 In
 
 Abbey,
 
 Gertrude Patrick, a patient, filed a medical negligence claim against Dr. Abbey, alleging that her recent blindness was caused by Dr. Abbey’s negligence in treating her eye disorder.
 
 Abbey,
 
 16 So.3d at 1052. There, Patrick filed a notice of intent to initiate litigation on July 28, 2006.
 
 Id.
 
 Dr. Abbey received the notice “on August 2, 2006, thirty-seven days before the statute of limitations would have expired.”
 
 Id.
 
 Pursuant to section 766.106(4), Florida Statutes (2006), filing the notice had the effect of tolling the statute of limitations for a period of ninety days.
 
 Id.
 
 at 1052-53. The trial court concluded that Patrick was entitled to the remaining thirty-seven days and that the additional ninety days would be added at the expiration of that time — in other words, giving Patrick one-hundred and twenty-seven days to initiate litigation.
 
 Id.
 
 at 1053. After the thirty-seven days passed, Dr. Abbey moved for summary judgment, which the trial court denied. Dr. Abbey then petitioned the First District for a writ of certiorari, arguing that his motion should have been granted because “the statute of limitations expired before the plaintiff filed suit against him for medical negligence.”
 
 Id.
 
 If Dr. Abbey were correct that the tolled time should have been concurrent, as opposed to consecutive, then the trial court would have erred in denying his motion because the statute of limitations would have lapsed and Patrick’s claim would have been time-barred. The First District concluded that the alleged error in computing the time for filing a lawsuit did not deprive Dr. Abbey of his rights under the medical malpractice presuit screening requirements and thus, the order denying Dr. Abbey’s motion did not meet the requirements for certiorari relief.
 
 See id.
 
 at 1055-56. In reaching its decision, the First District relied on this Court’s decision in
 
 Globe
 
 and the Fourth District’s decision in
 
 St. Mary’s.
 
 The First District explained, “The trial judge afforded him the process he was due under the medical malpractice presuit screening statute. He had advance notice and an opportunity to evaluate the plaintiffs claim before the filing of the lawsuit.... ”
 
 Id.
 
 at 1055. The district court concluded that because there was no error that deprived him of the process, Dr. Abbey was “not in a position to argue that immediate review [wa]s necessary to protect his statutory right to the process.”
 
 Id.
 

 Under this line of cases, the First District exceeded its authority in granting the writ of certiorari to review the sufficiency of Dr. Foster’s qualifications under chapter 766. Instead of granting Dr. Oken’s petition for writ of certiorari, the First District should have dismissed the petition because Williams complied with the procedural statutory requirements — the filing of the initial and supplemental affidavits and the CV. Dr. Oken was afforded the process guaranteed by statute because he received advance notice and an opportunity to examine Williams’ claim before the filing of the lawsuit. Thus, a deprivation of the process did not occur. Under these cases, certiorari would be inappropriate because the
 

 
 *1137
 
 justification for issuing a writ of certio-rari is diminished greatly if the parties have been afforded the essential process guaranteed by law and the judge has merely made a mistake in an order or ruling entered in the course of the proceeding. In that event, the relief afforded by an appeal from the final judgment will be adequate, and certiorari will not lie even if the error is one that amounts to a departure from the essential requirements of the law.
 

 Abbey,
 
 16 So.3d at 1055. We adopt this rationale. Whether the trial court erred in finding that Dr. Foster was a qualified expert under the statute is an issue of mere legal error that is insufficient to merit certiorari review. Here, as in
 
 Abbey,
 
 the trial judge’s ruling does not amount to a violation of a clearly established principle of law resulting in a miscarriage of justice.
 

 Conclusion
 

 While ensuring that an expert meets the statutory presuit requirements is clearly an important consideration in medical malpractice cases, in the instant case, the First District exceeded its authority by granting certiorari to review whether Williams’ expert met those qualifications. Florida courts have permitted certiorari review solely to ensure that the procedural aspects of the presuit requirements are met. The First District would have been correct in granting certiorari review to determine whether Williams complied with the procedural presuit requirements in terms of submitting a corroborating affidavit. However, we conclude that the First District exceeded the scope of certiorari review when it granted the petition to determine whether Dr. Foster was a qualified expert. As articulated in the dissent, the First District should have instead dismissed the petition and remanded the case to the trial court for an evidentiary hearing on whether Dr. Foster was qualified as an expert because it appears that “there is no doubt that Appellee complied with the presuit requirements of chapter 766; not one step was omitted.”
 
 Oken,
 
 23 So.3d at 151 (Browning, J., dissenting).
 

 Accordingly, we quash the First District’s decision in
 
 Oken,
 
 and approve the Fourth District’s decision in
 
 St. Mary’s.
 
 Because we find that the First District’s grant of certiorari was inappropriate, we decline to address the remaining issues.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . Florida Rule of Civil Procedure 1.650 creates presuit screening rules for medical malpractice claims. The statutory presuit screening provisions were intended by the legislature to facilitate the expedient, and preferably amicable,
 
 Ingersoll v. Hoffman,
 
 589 So.2d 223, 224 (Fla.1991), resolution of medical malpractice claims.
 
 See Univ. of Miami v. Wilson,
 
 948 So.2d 774, 777 (Fla. 3d DCA 2006);
 
 Wilkinson v. Golden,
 
 630 So.2d
 
 *1134
 
 1238, 1239 (Fla. 2d DCA 1994). The legislative purpose is described at length in the statutes.
 
 See
 
 § 766.201, Fla. Stat. (2005). Perhaps the greatest impact of this rule is the establishment of a ''presuit investigation phase,” through a notice procedure. The rule anticipates that during the presuit investigation phase, the defendant will investigate the medical malpractice claims to determine the extent of liability, if any.
 
 See Michael v. Med.. Staffing Network, Inc.,
 
 947 So.2d 614, 618 (Fla. 3d DCA 2007). This process is intended to sort out meritless claims and encourage the resolution of meritorious claims through settlement.
 
 Univ. of Miami,
 
 948 So.2d at
 
 111.
 
 Ultimately, the process is intended to alleviate the associated costs with such litigation.
 
 See Weinstock v. Groth,
 
 629 So.2d 835, 838 (Fla.1993).